UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

WHITTINGTON MOTOR SPORTS, INC.
d/b/a SCOTTSDALE SPORTS CAR
GROUP,

    Plaintiff,

v.

CURATED INVESTMENTS, LLC
and TOPGEAR AUTO, LLC,

    Defendants.
_____/

CASE NO.:

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Whittington Motor Sports, Inc. d/b/a Scottsdale Sports Car Group ("Plaintiff"), by counsel, hereby sues Curated Investments, LLC ("Curated") and TopGear Auto, LLC ("TopGear") (together, "Defendants") and states as follows:

## NATURE OF THE ACTION

1. Plaintiff is a reputable supercar broker for celebrities, athletes and other high net worth individuals looking to secure rare and expensive vehicles. The principal of Plaintiff, R.D. Whittington, is the star of a television show called Million Dollar Wheels in which he regularly secures hard-to-find supercars and luxury vehicles for his clients. As the name of the show implies, the vehicles brokered by Plaintiff regularly cost in excess of one million dollars.

2. At issue in this lawsuit is a 2003 Ferrari Enzo with just 7,429 miles. The 2003 Ferrari Enzo is a highly coveted vehicle with a naturally aspirated 6.0 liter V12 engine. It is estimated that only 399 such vehicles were produced by Ferrari in 2003 with styling and transmission derived from the Formula 1 race car.

3. Curated promised to sell Plaintiff a 2003 Ferrari Enzo, VIN #ZFFCW56A830131241 (the "Ferrari"), owned by TopGear, for $2.6 million, knowing that Plaintiff is a reputable broker of such vehicles and was, in turn, prepared to sell the vehicle at a profit to its customer. In reliance on Curated's promise, Plaintiff paid Curated a deposit of $160,000. Subsequently, Curated refused to allow Plaintiff to inspect the Ferrari in a commercially reasonable manner. Unbeknownst to Plaintiff, however, the Defendants had promised to sell the same vehicle to another buyer at a higher price and then refused to return the deposit to Plaintiff. In this action, Plaintiff seeks to recover its deposit and the lost profits it would have earned but for Defendants' wrongful conduct.

## THE PARTIES

4. Plaintiff is an Arizona Corporation with its principal place of business located in Scottsdale, Arizona. Plaintiff is a broker for luxury cars and supercars, regularly arranging transactions where Plaintiff purchases a vehicle with an agreement to sell the vehicle to a third party for a profit.

5. Upon information and belief, Curated is a Florida limited liability company with its principal place of business located in Miami, Florida and members who reside in Florida, Connecticut and California. Curated is a dealer of automobiles, including high performance vehicles.

6. Upon information and belief, TopGear is Georgia limited liability company with its principal place of business located in Warner Robins, Georgia. Upon information and belief, TopGear's sole member is Daxes Banit, an individual who resides in Georgia. TopGear was the owner of the Ferrari at the time Curated promised to sell it to Plaintiff.

## JURISDICTION AND VENUE

7. Jurisdiction over this action is founded upon 28 U.S.C. § 1332(a), as the parties are citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8. There is complete diversity of citizenship between Plaintiff and Defendants.

9. The Court has personal jurisdiction over Defendants based on their contacts with the State of Florida, including but not limited to conducting business in Florida, entering into a contract in Florida, and committing, facilitating, assisting, encouraging or conspiring to commit the actions giving rise to the harm and damages alleged herein in the State of Florida.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and otherwise because a substantial portion of the events giving rise to this action occurred in this district.

## FACTS

11. On or about July 6, 2020, Plaintiff offered to purchase the Ferrari for $2,600,000 from Curated, who was acting as a broker on behalf of TopGear.

12. Curated accepted Plaintiff's offer to purchase the Ferrari.

13. Shortly thereafter, Plaintiff remitted $100,000 to Curated as a deposit for the purchase of the Ferrari.

14. Plaintiff made two additional deposits and, by January 12, 2021, Plaintiff had remitted a total of $160,000 to Curated as a deposit toward the purchase of the Ferrari. Upon information and belief, some or all of the deposit was remitted by Curated to TopGear.

15. On or about July 23, 2021, Plaintiff and Curated memorialized the agreement for the sale of the Ferrari in a contract labeled "Buyer's Order" (the "Contract"). A true and correct copy of the Contract, executed by Curated, is attached hereto as **Exhibit A**.

16. As it pertains to the deposit, the Contract states, in part:

Unless you have cancelled this Contract under the condition described in the Manufacturer section, *if you refuse to take delivery* of the Vehicle [Ferrari], we can keep any deposits you have made to us, and you will be liable to us for all of our damages and expenses in connection herewith, including but not limited to reasonable attorneys' fees.

17. The Contract states the purchase price of $2,600,000 and identifies the Ferrari, including by VIN number.

18. As it pertains to vehicle inspections, the Contract provides as follows:

You are purchasing the Vehicle [Ferrari] based upon your personal inspection, and are not relying upon any opinion, statement, promise or representation of the salesperson, or any other of our employees that is not contained in the written agreements you are signing today.

19. As is customary for a vehicle purchase of this type and consistent with its contractual right to conduct a personal inspection, Plaintiff requested a pre-purchase inspection of the Ferrari at an authorized Ferrari dealership closest to where the vehicle was located, Ferrari of Atlanta.

20. Curated refused Plaintiff's request for this inspection. Upon information and belief, Curated refusal to allow the inspection was due to the fact that Defendants had surreptitiously already arranged for the sale of the same Ferrari at a higher price to another buyer, in contravention of the Contract.

21. At all relevant times, Plaintiff complied with the terms of the Contract. Plaintiff never refused to take delivery of the Ferrari.

22. Due to Defendants' conduct, Plaintiff incurred additional damages in the amount of $500,000 representing lost profits that Plaintiff would have realized if it sold the Ferrari to the third party on whose behalf it was brokering the purchase and sale of the Ferrari.

23. Defendants have also been unjustly enriched because they refuse to return the total deposit of $160,000 that Plaintiff paid toward the purchase of the Ferrari, despite the fact that Defendants sold the Ferrari to a third party for approximately $2,800.000.

24. Moreover, Defendants' retention of the deposit is an unenforceable penalty under Florida law. *See Hot Devs., Inc. v. Willow Lake Ests., Inc.*, 950 So. 2d 537, 542 (Fla. 4th DCA 2007) (holding that retaining a deposit as liquidated damages was unconscionable because it was grossly disproportionate to any damages that might reasonably have resulted from the buyer's default).

25. All conditions precedent have been met or have been waived by Defendants.

26. Plaintiff has retained the undersigned counsel to represent it in this action and is obligated to pay its counsel a reasonable fee for services rendered and expenses incurred on its behalf.

## COUNT I
### (Breach of Contract – As to Curated)

27. Plaintiff realleges and incorporates each of the preceding paragraphs 1 through 26 as if fully set out herein.

28. The Contract is a binding and enforceable agreement between Plaintiff and Curated.

29. Pursuant to the terms of the Contract, Curated agreed to sell the Ferrari to Plaintiff for $2,600,000.

30. Curated accepted a deposit from Plaintiff in the total amount of $160,000.

31. Plaintiff fully performed its obligations under the terms of the Agreement at all times material, except those that were waived, excused or rendered impossible and/or impracticable.

32. Curated breached the Contract by refusing to allow the customary pre-purchase inspection of the Ferrari.

33. Curated further breached the Contract by refusing to return the deposit to Plaintiff.

34. Curated further breached the Contract by selling the Ferrari to a third party despite having a binding agreement with Plaintiff to sell Plaintiff the Ferrari.

35. Plaintiff is entitled to a judgment against Curated for damages in an amount in excess of $75,000 plus fees and costs incurred by Plaintiff to date. The amount of damages will be proven at trial.

## COUNT II
### (Unjust Enrichment – As to all Defendants)

36. Plaintiff realleges and incorporates each of the preceding paragraphs 1 through 26 as if fully set out herein.

37. Defendants have been unjustly enriched in that a benefit has been conferred upon Defendants, namely the possession of the deposit amount of $160,000. Moreover, Defendants retention of the deposit violates Florida law. *See Hot Devs., Inc.*, 950 So. 2d at 542.

38. Defendants have knowledge of this conferred benefit.

39. Defendants voluntarily accepted and retained this conferred benefit.

40. Because Defendants are retaining the deposit amount of $160,000 delivered by Plaintiff to which Defendants have no right or title to, or interest in, and have failed to forward repayment to Plaintiff, the rightful owner of the deposit amount, it would be inequitable for Defendants to retain the deposit amount. Indeed, this inequity would unjustly enrich Defendants and damage Plaintiff.

## COUNT III
### (For Tortious Interference with Contract – As to Defendant TopGear)

41. Plaintiff realleges and incorporates each of the preceding paragraphs 1 through 26 as if fully set out herein.

42. Plaintiff is informed and believes and on that basis alleges that TopGear knew of the existence of the Contract.

43. TopGear intentionally and without justification interfered with the Contract by, among other things, selling the Ferrari to a third party while it was subject to the Contract and for a greater amount, thereby denying Plaintiff its contractual right to proceed with the purchase of the Ferrari.

44. As a result of TopGear's interference, Plaintiff has suffered damages.

45. The aforementioned conduct of TopGear has been despicable, wanton, oppressive, willful, malicious, and performed with conscious disregard of Plaintiff's rights and with the intent to deprive it of its rights. Accordingly, Plaintiff is entitled to an award of punitive and exemplary damages.

## COUNT IV
### (Fraud – As to Curated)

46. Plaintiff realleges and incorporates each of the preceding paragraphs 1 through 26 as if fully set out herein.

47. The acts engaged in by Curated, as alleged herein, constitute fraud, including fraudulent inducement, fraud by intentional misrepresentation, false promise and concealment.

48. Curated represented to Plaintiff that it would sell to Plaintiff the Ferrari for $2.6 million.

49. Instead, Curated deliberately and maliciously induced Plaintiff to make a deposit toward the purchase of the Ferrari with the intention of refusing to proceed with the sale and, instead, sell the Ferrari at a higher price to a third party.

50. Curated knew at the time that it made this promise and representation to Plaintiff that it had no intention of fulfilling it.

51. Curated knew that its representation to Plaintiff was false because it knowingly planned to sell the Ferrari that was subject to the Contract to a third-party.

52. As a proximate result of Curated's fraud and the facts alleged herein, Plaintiff has suffered damages in an amount to be determined at trial.

53. Curated's acts were fraudulent in nature and done with malice and willful disregard for Plaintiff's rights, and with the intent to cause economic injury to Plaintiff. As a result of such willful, intentional malicious and oppressive conduct, Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Whittington Motor Sports, Inc. d/b/a Scottsdale Sports Car Group demands judgment against Curated Investments, LLC for damages in an amount to be determined at trial, costs, interest and reasonable attorneys' fees (pursuant to the "Agreement to Purchase" provision of the Contract) and for such further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues so triable.

Dated: September 16, 2022

Respectfully submitted,

**AKERMAN LLP**
201 East Las Olas Boulevard
Suite 1800
Fort Lauderdale, FL  33301
Telephone: (954) 463-2700
Facsimile:

*/s/Ryan Roman*
Ryan Roman, Esq.
Florida Bar No. 025509
Primary e-mail: ryan.roman@akerman.com
Secondary: lauren.chang-williams@akerman.com
Reginald Janvier, Esq.
Florida Bar No. 1011001
Primary e-mail: reginald.janvier@akerman.com

*Attorneys for Plaintiff*